FILED
2009 APR 17 PM 4:30
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY ___
DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **MARIA DEL CONSUELO ALVAREZ**<br>**Plaintiff** | § | |
| **vs.** | § | **Civil Action:** ___ |
| | § | **SA09CA0299OG** |
| **THE GEO GROUP, INC.; VAL VERDE COUNTY, D'Wayne Jernigan, Former Sheriff of Val Verde County in his official capacity; Warden Scott in his official and individual capacities; Unknown Security Guards, including Officer Benavides; Officer Garcia; Officer Guzman; Officer Hernandez; Officer Maldonado; Captain Luciano Reyes; and Officer Salduvas in their employee and individual capacities**<br>**Defendants** | § | |

---

## PLAINTIFF'S ORIGINAL COMPLAINT

NOW COMES Plaintiff Maria Del Consuelo Alvarez ("Plaintiff" or "Alvarez") complaining of and about (1) Defendant The GEO Group, Inc. ("Defendant Geo"); (2) Defendant Val Verde County; (3) D'Wayne Jernigan, Former Sheriff of Val Verde County in his official capacity, (4) Warden Scott in his individual and official capacities, (5) unknown security guards, including Officer Benavides; Officer Garcia; Officer Guzman; Officer Hernandez; Officer Maldonado; Captain Luciano Reyes; and Officer Salduvas in their employee and individual capacities. Plaintiff respectfully shows the Court the following:

## STATEMENT OF CLAIM

1. Plaintiff Maria Del Consuelo Alvarez brings this civil rights action for monetary

relief, seeking redress from Defendants for conduct relating to the severing of her fingers while in the Val Verde Correctional Facility & County Jail.

2. Plaintiff complains that Defendants are liable for the deprivation of Plaintiff's constitutional rights under color of law and in violation of the Eighth and Fourteenth Amendments of the U.S. Constitution.

3. Plaintiff also brings supplemental actions arising under Texas common law and the Texas Tort Claims Act.

**JURISDICTION AND VENUE**

4. This action is brought pursuant to 42 U.S.C. §§1983 and 1988. Jurisdiction is based on 28 U.S.C. §§ 1331, 1332 (a) (1), and 1343(a) (3) (4).

5. Plaintiff further invokes the supplemental jurisdiction of this Court, pursuant to 28 U.S.C. § 1367(a), to consider her state law claims.

6. Venue is proper in this court under 28 U.S.C. §1391(c) because Defendant GEO maintains a regional corporate office in New Braunfels, within this district.

**PARTIES**

7. Plaintiff Maria Del Consuelo Alvarez ("Alvarez") sues in her individual capacity. Alvarez is a resident of the State of New Mexico.

8. Defendant Geo is a Florida corporation. At all relevant times, Defendant Geo (a/k/a or f/k/a Wackenhut Corporation) operated the Val Verde Correctional Facility & County Jail (the "Facility"). Defendant Geo operates the Facility pursuant to a contract with Defendant Val Verde County (and any supplemental agreements or modifications thereto). In addition, Defendant Geo manages prisoner transports and escorts for the Facility and manages Facility maintenance services. Defendant Geo is responsible for the training, supervision, management,

and conduct of the officers working in the Facility under the doctrine of *respondeat superior*. At all times, GEO acted under the color of law and as the agent, servant, and, as a matter of law, the official representative of Val Verde County.

9. Defendant Val Verde County is a political subdivision of the State of Texas. At all relevant times, Defendant D'Wayne Jernigan was the Sheriff of Defendant Val Verde County and, thus, the chief administrative officer of the Facility.

10. At all relevant times, Warden Scott was the warden in the Facility, an employee of Defendant Geo, and acting as agent, servant, and employee of Defendant Geo and Defendant Val Verde County. He is sued in his individual capacity.

11. At all relevant times, (1) Officer Benavides; (2) Officer Garcia; (3) Officer Guzman; (4) Officer Hernandez; (5) Officer Maldonado; (6) Captain Luciano Reyes; and (7) Officer Salduvas were employees of Defendant Geo in the Facility, and acting as agents, servants, and employees of Defendant Geo and Defendant Val Verde County. They are sued in their individual capacities (collectively, the "Facility Employee Defendants").

12. All Defendants, for diversity purposes, are citizens of the State of Texas.

**STATEMENT OF FACTS**

13. Defendant Geo designed, financed, and built the Facility.

14. Defendant Geo is the owner of the Facility.

15. Defendant Geo operates the Facility pursuant to a contract with Defendant Val Verde County (and any supplemental agreements or modifications thereto). In addition, Defendant Geo manages prisoner transports and escorts for the Facility and manages Facility maintenance services. Defendant Geo was responsible for the training, supervision, management, and conduct of the officers working in the Facility under the doctrine of *respondeat*

*superior*.

16. Defendant Geo is required to follow certain policies and procedures in the operation of the Facility, which specifically include, but are not limited to, the Texas Commission on Jail Standards and the standards and guidelines set forth in the Texas Administrative Code.

17. In or around early April 2007, Defendant Geo received and processed Alvarez at the Facility. Alvarez was serving a ten-month sentence for a minor probation violation. Defendant Geo scheduled Alvarez to be released in November 2007.

18. On April 17, 2007, a few days later, Defendant Geo ordered the transfer of Alvarez from cell number 112 to cell number 107.

19. Defendant Geo's officers, including Officer Garcia, supervised the transfer of Alvarez.

8. Cell number 112 has a heavy steel detention door (the "Detention Door"), that is operated electronically from the Control Room in the facility. The Detention Door has power operated locks. From the Control Room, Defendant Geo's officers have clear visibility of the living areas and cell doors.

20. As of April 17, 2007, the Detention Door had not operated properly and/or had been defective for over 1.5 years. At times, the massive Detention Door would swing, slam, or latch shut automatically without warning. In the past, the Detention Door had injured other inmates. Defendant Geo's previous attempts to repair or to fix the Detention Door were unsuccessful. It was common knowledge among the inmates that Defendant Geo's officers were afraid to use the Detention Door themselves.

21. In addition, it was common practice for Defendant Geo's officers and inmates to

wedge a book in the hinge of the Detention Door to prop it open.

22. While Defendant Geo's officers, including Officer Garcia, supervised the transfer of Alvarez, Alvarez entered and exited cell number 112 as ordered. Defendant Geo's officers then ordered Alvarez to close the massive door. They also ordered her to remove the book that had been propping the defective and broken door open. Alvarez attempted to close the Detention Door slowly by pushing/pulling against the force of the Detention Door. But, the door was too heavy, and it swung forward pulling her body and her hand. The Detention Door slammed shut on her hand. The Detention Door latched shut on her right hand – locking it in place.

23. The blow severed Alvarez's middle finger. Two other fingers hung by a thread of skin. Alvarez's mangled hand was bleeding profusely. Inmates yelled for help.

24. Defendant Geo's officers, including Officer Garcia, continued to do inspections after Maria Del Consuelo Alvarez was injured. Defendant Geo's officers, including Officer Garcia did not call anybody.

25. One officer picked up the bloody stub of her chopped-off middle finger from the floor and casually handed it back to her, doing nothing to release her from the door or obtain medical care.

26. Inmates instructed Defendant Geo's officers, including Officer Garcia, to call a "code blue." Defendant Geo's officers, including Officer Garcia, did not call a code blue. No one ever did.

27. After some time, Defendant Geo's officers, including Officer Garcia, came to Alvarez's location. Defendant Geo's officers did not have first aid equipment. Defendant Geo's officers, including Officer Garcia, stared blankly, like deer in headlights, not knowing what to do. Officer Garcia did not express any interest or concern in helping Alvarez.

28. Inmates advised Defendant Geo's officers, including Officer Garcia, to give Alvarez their towel, so Alvarez could wrap it around her dangling two fingers for support. This time, Defendant Geo's officers complied.

18. Defendant Geo's officers, including Officer Garcia, told inmates to "rack it up" instead of (a) calling a code blue – medical emergency – over their radios; (b) obtaining immediate medical attention for Alvarez; or (c) taking Alvarez to the infirmary. In fact, Defendant Geo's officers finished racking before they took Alvarez to the infirmary.

29. It took at least forty-five minutes for medical personnel to see Alvarez even though these medical personnel were employed by Defendant Geo and were present at the Facility at the time.

30. It took at least thirty more minutes for Defendant Geo's officers to load Alvarez into a van for transport. Defendant Geo's officers, including Captain Luciano Reyes, refused to load Alvarez into a van until they could obtain a prison-issued orange shirt for her. After obtaining a prison-issued orange shirt for her and despite her protests of pain and requests for urgent medical care, Defendant Geo's officers, including Captain Luciano Reyes, forced the prison-issued orange shirt, restraints, and handcuffs over Alvarez's mangled right hand and over Alvarez's left hand, which still clutched the bloody stub of her chopped-off middle finger. During this time, Defendant Geo did not provide Alvarez pain medicine or disinfectant.

31. Defendant Geo's officers then wasted at least another twenty more minutes because the van needed to transport her to the Val Verde Regional Medical Center was not ready. Defendant Geo failed and/or refused to call EMS.

32. It took at least fifteen more minutes for Defendant Geo's officers, including Officer Maldonado, to transport Alvarez to the Val Verde Regional Medical Center. Officer

Maldonado ridiculed, laughed at, cussed at, and insulted Alvarez because of her mangled and disfigured hand.

33. Val Verde Regional Medical Center reattached two of the three fingers. The middle finger could not be reattached. Alvarez's reattached fingers are physically impaired.

34. While receiving medical treatment at Val Verde Regional Medical Center, Officer Hernandez ridiculed, laughed at, cussed at, and insulted Alvarez because of her mangled and disfigured hand.

24. In the hours, days, and weeks that followed the horrific incident, Defendant Geo and the Facility Employee Defendants smirk and laugh at her in front of others. Defendant Geo and the Facility Employee Defendants (including Officer Benavides and Officer Salduvas) ridiculed, laughed at, cussed at, and insulted Alvarez privately and publicly. Some remarks include: (a) "Now you are half a woman;" (b) "Donde esta la pendeja que se mocho los dedos;[1]" (c) "Who is the dumb one who put her fingers in the door?" Defendant Geo's officers made it known to all that everybody is laughing at what is left of Alvarez.

35. Upon Alvarez's return to the Facility, Defendant Geo refused to allow Alvarez access to medication and medical treatment as prescribed by Gloria Box, M.D. of Val Verde Regional Medical Center.

36. Defendant Geo's officers, including Officer Guzman, ordered and attempted to force Alvarez to move into cell number 112 and through the Detention Door.

37. Defendant Geo did not allow Alvarez to take pictures of the Detention Door.

38. Defendant Geo, including Warden John Campbell, took Alvarez's pictures of her injuries away from her and never returned them.

39. In May 2007, Defendant Geo inexplicably transferred Alvarez to a facility in

1 English translation: "Where is the dumbass that cut her fingers off?"

Houston. Defendant Geo's transfer of Alvarez separated Alvarez from her primary treating physician, Gloria Box, M.D., and her then lawyer Jad P. Harper.

40. All required notices have been given.

**CAUSES OF ACTION**

**COUNT ONE AND COUNT TWO –**

**FEDERAL DUE PROCESS AND CRUEL AND UNUSUAL PUNISHMENT**

41. The allegations setting forth facts from above are incorporated herein by reference.

42. Defendants' actions, done under color of law and their authority, intentionally and with conscious, callous and deliberate indifference to Plaintiff's constitutional rights under the Fifth, Eighth and Fourteenth Amendments, deprived her of her due process rights and her right to be free from cruel and unusual punishment.

43. On information and belief, Defendants, acting at the level of official policy and custom, with deliberate, callous, and conscious indifference to Plaintiff's constitutional rights, authorized, tolerated, and institutionalized the practices and ratified the illegal conduct herein detailed, proximately causing the deprivation of Plaintiff's due process and cruel and unusual punishment rights, and the resulting injury suffered, by:

a. Failing and refusing to provide health treatment for Plaintiff following a catastrophic injury to her hand;

b. Failing and refusing to take adequate preventive measures upon discovery of dangerous and defective facilities which led to the severing of Plaintiff's fingers;

c. Physically and mentally abusing Plaintiff by forcing her to change her shirt (while in horrific pain and while clutching her severed fingers in her hand) prior to transporting her to an emergency room;

d. Mentally abusing Plaintiff by ridiculing her upon having her fingers

severed, forcing her to clean up the blood with a towel prior to taking her to an infirmary, and claiming that she would now be less of a woman.

**COUNT THREE – TEXAS TORT CLAIMS ACT**

44. The allegations setting forth facts from above are incorporated herein by reference.

45. Plaintiff asserts a claim under the Texas Tort Claims Act, Tex. Civ. Practice & Remedies Code §101.021, against Val Verde County for the negligent, grossly negligent, and reckless care and custody of Plaintiff while she was a detainee of the jail, including, but not limited to, the use and misuse of tangible properly (the defective door which caused the severing of her fingers) and the failure to comply with a reasonable standard of care. This claim arises from the performance of a proprietary function so that sovereign immunity is waived by the Act.

**COUNT FOUR – NEGLIGENCE AGAINST ALL DEFENDANTS**

46. The allegations setting forth facts from above are incorporated herein by reference.

47. Plaintiff incorporates herein and reasserts for all purposes the pleadings and factual allegations of all previous and subsequent paragraphs.

Plaintiff asserts claims to common law negligence and negligence per se against all Defendants.

48. At the time of said occurrence, Defendants engaged in a negligent activity by, among other things, disregarding the safety of Plaintiff. The Defendants failed to do what persons of ordinary prudence in the same or similar circumstances would have done or, alternatively, did what persons of ordinary prudence in the same or similar circumstances would not have done.

49. At the times relevant herein, Defendants are in the business of, among other things, (a) designing, financing, building, owning, and managing jails, state and federal prisons,

special-purpose institutions, and immigration and detention centers; (b) managing secure prisoner transports and escorts; and (c) managing facility maintenance services, including health care. Defendants held themselves out as having special expertise in the industry. As such, Defendants owed Alvarez a duty to use reasonable care in the (a) operation and management of the Facility; (b) the training, supervision, management, and conduct of the Facility Employee Defendants; (c) the design, manufacture, installation; preparation, testing, maintenance, instructing, and warnings surrounding the Detention Door. Defendants violated these duties. Defendants were negligent. The negligent acts and/or omissions specifically include, but are not limited to, the following:

a. Negligently supplying, implementing, and/or utilizing a Detention Door that was defective and unreasonably dangerous.

b. Negligently adopting, implementing, and/or utilizing policies and procedures to transfer inmates into and out of the cell with the defective Detention Door.

c. Negligently designing the Detention Door in a manner that created an extreme risk of it failing that was both beyond the expectations of inmates (and employees alike) and created a risk that far outweighed any benefits associated with the design.

d. Negligently manufacturing and/or installing the Detention Door in a manner that created an extreme risk of it failing that was both beyond the expectations of inmates (and employees alike) and created a risk that far outweighed any benefits associated with the design.

e. Negligently failing to test the Detention Door to ensure the design provided, among other things, safety to its users.

f. Negligently failing to test <u>properly</u> the Detention Door to ensure the design provided, among other things, safety to its users.

g. Negligently providing instructions or directions regarding use of the Detention Door and failing to test the Detention Door to ensure that the instructions and/or warnings provided, among other things, were adequate and not misleading.

h. Negligently failing to disclose problems and defects.

i. Negligently failing to install and/or utilize reasonable and necessary door closers and/or appropriate door closers to control the closing of the Detention Door as recommended by 37 Texas Administrative Code § 260.150.

j. Negligently failing to install and/or utilize reasonable and necessary door stops and/or appropriate door stops as required by 37 Texas Administrative Code § 260.146.

k. Negligently failing to install and/or utilize reasonable and necessary door closers to control the closing of the Detention Door.

l. Negligently failing to warn of all dangers associated with the Detention Door.

m. Negligently failing to warn inmates and employees of <u>known</u> dangers/defects regarding the Detention Door.

n. Negligently failing to identify, collect, review, study, document, gather and/or organize information, grievances, and complaints pertaining to injuries and near injuries/accidents associated with the use of the Detention Door.

o. Negligently designing the facility such that it fails to provide for support functions and equipment to ensure safe, secure, and efficient operations as required by 37 Texas Administrative Code § 259.3.

p. Failed to follow or negligently followed procedures for efficient and prompt health care for acute and emergency situations as required by 37 Texas Administrative Code § 273.2.

q. Failed to provide or failed to provide timely adequate first aid equipment and or medical care.

r. Failed to implement; failed to follow; or negligently followed the written plan for inmate services as set forth by 37 Texas Administrative Code § 273.2.

s. Failed to provide reasonable means to protect Alvarez;

t. Failed to warn Alvarez of any possible danger existing on the Defendants' premises;

u. Failed to warn Alvarez of the negligent premises in question;

v. Failed to provide proper procedures to keep the premises reasonably safe when it knew or should have known of unreasonable dangerous conditions.

w. Failed to reduce or eliminate the dangerous condition which Defendants knew or should have known existed on the premises.

x. Failed to follow policies and procedures contained in the Defendant Geo's Policies and Procedures Manual; internal policies and procedures; policies and procedures prescribed by applicable agreements; policies and procedures prescribed by applicable law; and/or policies and procedures prescribed by industry standards.

y. Negligently or unreasonably delayed in providing medical attention, which was readily available to Alvarez.

z. Negligently hired, trained, developed, managed, and supervised the Facility Employee Defendants. Failed to implement adequate safeguards to prevent the incident that resulted in Alvarez's damages.

aa. Failed to conduct adequate inspections of the premises to make timely discovery of dangerous conditions thereon.

bb. Failed to maintain said premises in a reasonably safe condition for the Plaintiff;

50. These acts and/or omissions of negligence by the Defendants created an environment in which accidents and/or injuries to inmates and employees were likely and reasonably foreseeable to occur, and which in fact did occur in the course of the events hereinabove.

51. These acts and/or omissions of negligence by the Defendants were a proximate and/or a producing cause of the incident, injuries resulting therefrom, and damages sustained by the Plaintiff.

52. These acts and/or omissions of negligence by the Defendants were below accepted industry standards and guidelines. It was Defendants' duty to perform its work in accordance

with accepted industry standards and in a good and workmanlike manner. All Defendants breached the above and other duties owed to Plaintiff, and such breaches were a proximate and/or a producing cause of damages to Plaintiff. Accordingly, Plaintiff is entitled to be compensated for her losses sustained as a result of each Defendants' negligent and wrongful acts and omissions.

53. Plaintiff seeks herein, as a result of each Defendant's negligence, all of Plaintiff's actual damages, consequential damages, incidental damages, compensatory damages, mental anguish damages, punitive damages, pre-judgment interest, post-judgment interest, costs of court, expenses of the litigation, and reasonable and necessary attorneys' fees through trial and all appeals in this matter, as allowed by law.

## COUNT FIVE

## PREMISES LIABILITY AGAINST DEFENDANT GEO AND DEFENDANT VAL VERDE

54. The allegations setting forth facts from above are incorporated herein by reference.

55. Plaintiff asserts that Defendant Geo and Defendant Val Verde County are the possessors of the premises on which the injury occurred.

56. The condition of the premises, specifically the door referenced herein, was a premises defect.

57. The condition of the premises posed an unreasonable risk of harm.

58. The Defendants had actual knowledge of the danger.

59. The Plaintiff did not have actual knowledge of the danger.

60. The Defendant breached its duty of ordinary care by both failing to adequate warn Plaintiff of the condition, and failing to make the condition reasonably safe.

61. The Defendants breach proximately caused the Plaintiffs injuries.

62. Defendant Val Verde County, if it were a private person, would be liable under Texas law, and no exception to the waiver of immunity bars recovery.

63. All required notices have been given.

**COUNT SIX - ASSAULT**

64. The allegations setting forth facts from above are incorporated herein by reference.

65. Plaintiff asserts common law assault against the individuals named herein for their brutal and inhumane treatment of Plaintiff. Plaintiff was verbally threatened, made to suffer through deprivation of medical care, taunted about the fingers she had just lost, forced to clean the blood from her own wounds prior to being taken to the infirmary, and forced to endure horrific pain by trying to change clothes -- without assistance -- while trying to keep her severed fingers from falling from her failing grip. These actions caused her severe emotional trauma. Plaintiff asserts these claims against GEO as *respondeat superior*.

**COUNT SEVEN – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

66. The allegations setting forth facts from above are incorporated herein by reference.

67. Defendants' conduct in engaging in the conduct set forth herein was intentional and/or reckless.

68. Defendants' conduct was extreme and outrageous.

69. Defendants' conduct proximately caused severe emotional distress to Plaintiff.

70. Plaintiff's severe emotional distress cannot be remedied by any other cause of action.

71. Defendants' wrongful acts caused injury to Plaintiff

72. Plaintiff seeks herein, as a result of each Defendants' actions, all of Plaintiff's actual damages, consequential damages, incidental damages, compensatory damages, mental anguish damages, punitive damages, pre-judgment interest, post-judgment interest, costs of court, expenses of the litigation, and reasonable and necessary attorneys' fees through trial and all appeals in this matter, as allowed by law.

**AGENCY**

73. At and during the time of the acts and/or omissions complained of herein, any acts and/or omissions committed by an agent, representative or employee of Defendant occurred within the scope of the actual or apparent authority of such person on behalf of said Defendant.

74. Defendant is therefore liable to Plaintiff for the acts and/or omissions of any such agent, representative or employee complained of herein by virtue of such agency relationship.

**RESPONDEAT SUPERIOR**

75. At and during the time of the acts and/or omissions complained of herein, said acts and/or omissions of any employee of Defendants occurred within the scope of the general authority and for the accomplishment of the objectives for which such employee was employed.

76. Defendant is therefore liable to Plaintiff for the acts and/or omissions of any such employee complained of herein under the doctrine of *respondeat superior*.

**MISNOMER OR MISIDENTIFICATION**

77. In the event any parties are misnamed or not included herein, it is Plaintiff's contention that such was a "misnomer" and/or such parties are/were "alter egos" of parties named herein. In the event that the true parties are misidentified, Plaintiff hereby asserts reliance upon the doctrine of misidentification.

**DAMAGES**

78. As a proximate cause, producing cause, and/or cause of the Defendants' conduct, and all other allegations of acts/omissions herein, Plaintiff is entitled to recover actual damages, consequential damages, incidental damages, and compensatory damages, as allowed by law, which specifically include, but are not limited to, the following damages:

a. Medical, hospital, pharmaceutical expenses in the past;

b. Medical, hospital, pharmaceutical expenses that in all reasonable probability will be incurred in the future;

c. Physical pain and suffering in the past;

d. Physical pain and suffering that will in all reasonable probability be incurred in the future;

e. Physical impairment in the past;

f. Physical impairment which, in all reasonable probability, will be suffered in the future;

g. Loss of earnings in the past (and/or lost wages);

h. Loss of earning capacity that in all probability will be incurred in the future;

i. Disfigurement in the past;

j. Disfigurement that in all reasonable probability will be incurred in the future;

k. Loss of enjoyment of life in the past;

l. Loss of enjoyment of life that in all reasonable probability will be incurred in the future;

m. Mental anguish in the past;

n. Mental anguish that in all reasonable probability will be incurred in the future; and

o. Cost of medical monitoring and prevention in the future.

**EXEMPLARY DAMAGES**

79. Plaintiff would further show that the acts and omissions of Defendants complained of herein were committed knowingly, willfully, intentionally, with malice, with actual awareness, and with the specific and predetermined intention of enriching said Defendants at the expense of Plaintiff. Defendants specifically intended to cause substantial injury or harm to the Plaintiff. In order to punish said Defendants for such unconscionable overreaching and to deter such actions and/or omissions in the future, Plaintiffs also seek recovery from Defendants, other than Val Verde County, for exemplary damages as provided by Chapter 41 of the Texas Civil Practice and Remedies Code.

**ATTORNEYS' FEES AND COSTS**

80. Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to recover attorneys' fees and costs.

## PRAYER FOR RELIEF

81. Therefore, Premises Considered, Plaintiff Maria Del Consuelo Alvarez respectfully requests that the Court for the following:

a. Award punitive damages against all Defendants, as appropriate and as allowed by law;
b. Award compensatory damages against all Defendants, jointly and severally, as allowed by law;
c. Grant reasonable attorneys fees, litigation expenses, and court costs; and,
d. Grant such other and further relief as appears reasonable and just, to which Plaintiff may be entitled.

LAW OFFICE OF ISRAEL GARCIA
HISTORIC ONE TEN BROADWAY
110 Broadway, Suite 550
San Antonio, Texas 78205
Tel. 210.277.1801
Fax. 210.223.9708
ig@israelgarcialaw.com
www.israelgarcialaw.com

By:______________________________
Israel Garcia
Texas State Bar No. 24040950

CO-COUNSEL:

Cyrus F. Rea, II
Texas State Bar No. 00797291
HARGROVE & REA, P.C.
HISTORIC ONE TEN BROADWAY
110 Broadway, Suite 550
San Antonio, Texas 78205
Phone: 210-223-9700
Fax: 210-223-9708
crea@hargroverea.com
www.hargroverea.com

**COUNSEL FOR PLAINTIFF MARIA DEL CONSUELO ALVAREZ**