UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARIA DEL CONSUELO ALVAREZ, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| THE GEO GROUP, INC.; | § | SA-09-CV-0299 OG (NN) |
| VAL VERDE COUNTY; | § | |
| D'WAYNE JERNIGAN, Former Sheriff of | § | |
| Val Verde County, in his Official Capacity; | § | |
| Assistant Warden Mark SCOTT, in his | § | |
| Official and Individual Capacities; | § | |
| Officer FNU BENAVIDES, in his/her | § | |
| Employee and Individual Capacities; | § | |
| Officer FNU GARCIA, in his/her | § | |
| Employee and Individual Capacities; | § | |
| Officer FNU GUZMAN, in his/her | § | |
| Employee and Individual Capacities; | § | |
| Officer FNU HERNANDEZ, in his/her | § | |
| Employee and Individual Capacities; | § | |
| Officer FNU MALDONADO, in his/her | § | |
| Employee and Individual Capacities; | § | |
| Captain LUCIANO REYES, in his | § | |
| Employee and Individual Capacities; | § | |
| Officer FNU SALDUVAS, in his/her | § | |
| Employee and Individual Capacities; | § | |
| UNKNOWN SECURITY GUARDS, in his/ | § | |
| her Employee and Individual Capacities; | § | |
| | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION**

**TO:** **Hon. Orlando Garcia**
**United States District Judge**

This report and recommendation addresses four pending motions to dismiss and a motion

to amend. I have authority to enter this report and recommendation under 28 U.S.C. § 636(b) and

the district judge's order of referral.[1]

**Nature of the Case**. This case presents claims for the violation of civil rights and for state law torts. At the time of her factual allegations, plaintiff Maria del Consuelo Alvarez was a federal prisoner[2] detained at a Texas county jail—the Val Verde Correctional Facility and County Jail (the jail). The jail is operated by a private contractor—defendant The GEO Group, Inc.—under a contract with defendant Val Verde County, Texas (the County). The jail houses not only state prisoners, but also federal prisoners pursuant to an intergovernmental service agreement between the County and the U.S. Marshals Service. In addition to naming as defendants The GEO Group and the County, Alvarez named the former County sheriff D'Wayne Jernigan, Assistant Warden Mark Scott and several employees of The GEO Group who work as detention guards.

Alvarez alleges that she was severely injured while confined at the jail when without warning a defective steel door slammed closed and latched shut on her right hand. The blow severed Alvarez's middle finger and nearly severed two other fingers. Alvarez alleges that despite cries for help from other inmates, detention guards took no action to release her from the door. Once released, Alvarez alleges that she was not taken to on-site medical personnel for at least 45 minutes and that she was not transported to the local hospital for another 65 minutes, during which time she was ridiculed and insulted by detention guards. Medical personnel at the local hospital reattached two of Alvarez's fingers, but the third finger could not be reattached. Alvarez alleges that in the weeks after the incident, detention guards ridiculed, laughed at, cursed,

---

[1]Docket entry # 20.

[2]*See* Cause No. 2:05-CR-703-AML (2).

and insulted her about her mangled hand.

The GEO Group, Warden Scott, the County and former sheriff Jernigan filed similar motions to dismiss under Rule 12(b)(6).[3] A defendant in a civil action may move to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief may be granted."[4]

> To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[5]

Alvarez responded to two of the motions, in part, by asking for leave to file an amended complaint.[6]

The defendants styled their motions as motions to dismiss, but the motions relied on documentation outside the pleadings, requiring consideration under Rule 56 of the Federal Rules of Civil Procedure.[7] After reviewing the motions, I determined that the district court needed additional briefing and documentation.[8] The additional briefing addresses the nature of the County's contract with The GEO Group and arrangements for confinement of federal prisoners.

With the briefing complete, the motions are ripe for resolution. Because of the similarity

---

[3] Fed. R. Civ. P. 12(b)(6).

[4] *Id*.

[5] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)).

[6] Docket entry #s 14 & 15.

[7] *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.").

[8] Docket entry # 21.

3

of the motions to dismiss, this report addresses the parties' arguments by defendant or claim as applicable. Where documentary evidence is needed to resolve the motions, I treated the motions as motions for summary judgment.

**Section 1983 claims against The GEO Group**. The GEO Group maintains that it cannot be sued under section 1983 because it acted under color of federal law rather than under color of state law as required for a section 1983 claim. The GEO Group contends it acted under color of federal law because Alvarez was a federal prisoner.[9]

The County contracted with The GEO Group to perform a function traditionally the exclusive providence of the state—confinement of prisoners[10]—specifically, for the operation of the jail.[11] The County then entered into an agreement with the U.S. Marshals Service for the custody, care, safekeeping and medical care of federal prisoners.[12] As a prisoner, Alvarez was a

---

[9] Docket entry # 7, p. 1.

[10] *See Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 460 (5th Cir. 2003) (Under the Supreme Court's "public function" test, a private entity acts under color of state law "when that entity performs a function which is traditionally the exclusive province of the state.").

[11] *See* docket entry # 22, Attachments 2-4, contracts between Wackenhut Corrections Corporation and its successor The GEO Group, and the County.

[12] *See id.*, Attachment 1, Intergovernmental Service Agreement, between United States Marshals Service and Val Verde Detention Center, which provides at Article I (page 2):

> The Local Government agrees to accept and provide for the secure custody, care and safekeeping of federal prisoners in accordance with state and local laws, standards, policies, procedures, or court orders applicable to the operations of the facility.

With respect to Medical Services, Article III of the Agreement provides:

> The Local Government agrees to provide federal prisoners with the same level of medical care and services provided to local prisoners.

4

third-party beneficiary of both sets of contracts. The County's agreement with the U.S. Marshals Service did not change the character of The GEO Group's function. Because The GEO Group acted pursuant to its contract with the County, it acted in performance of a function traditionally the exclusive province of the state,[13] and thus acted as a state actor. Although no case law addresses the precise issue in this case, the Fifth Circuit has determined that "private prison-management corporations [like The GEO Group] and their employees may be sued under § 1983 by a prisoner who has suffered a constitutional injury."[14]

The GEO Group's reliance on the Supreme Court's decision in *Corrections Services Corporation v. Malesko*[15] is misplaced. Plaintiff Malesko was a federal prisoner who sued a private halfway house and an individual employee of the halfway house after the employee required that plaintiff use the stairs and refused to allow him to use the elevator which he had otherwise been authorized to use because of his heart condition. Plaintiff Malesko suffered a heart attack, fell, and injured his head as a result. The Supreme Court declined to extend *Bivens v. Six Unknown Federal Narcotics Agents*[16] to support a claim against the private corporate entity. *Malesko* teaches that *Bivens* does not provide a remedy against The Geo Group. But Alvarez does not plead a *Bivens* claim against The Geo Group.

Unlike Alvarez, Malesko was confined at a facility run by a prison management company

---

[13]*Rosborough*, 350 F.3d at 461 (stating that "confinement of wrongdoers—though sometimes delegated to private entities—is a fundamentally governmental function").

[14]*Rosborough*, 350 F.3d at 461.

[15]534 U.S. 61 (2001).

[16]403 U.S. 388 (1971).

5

under contract with the federal government. Unlike the prison management contractor sued in *Malesko*, The GEO Group confined federal prisoners under its contract with the County, not under a contract with the federal government. Alvarez's federal criminal judgment did not change the character of The GEO Group's function or its action. The GEO Group characterizes its role as part of a three-way relationship between The GEO Group, the U.S. Marshals Service, and the County,[17] but the documents authorizing The GEO Group to operate the jail reflect no relationship between The GEO Group and the U.S. Marshals Service. The contractual documents show that The GEO Group operates the jail because the County as a state entity—not a federal entity—authorized it to operate the jail. The GEO Group has not shown that Alvarez's status as a federal prisoner insulates it from liability under section 1983 as a state actor so as to be entitled to dismissal or summary judgment on this claim.

The GEO Group also contends Alvarez's section 1983 claim fails because she did not allege that an official policy was the moving force in the violation of a constitutional right.[18] In response, Alvarez asked to amend her complaint. "Rule 15(a) evinces a bias in favor of granting leave to amend, when justice so requires."[19] "The court should . . . give the plaintiff an opportunity to amend [her] complaint, rather than dismiss it, if it appears that a more carefully drafted complaint might state a claim upon which relief could be granted."[20] To the extent a pleading deficiency exists, Alvarez can correct the deficiency by amending her complaint. Once

---

[17]Docket entry # 22, p. 4.

[18]*Id.*, p. 2-3.

[19]*Rolf v. City of San Antonio*, 77 F.3d 823, 828 (5th Cir. 1996).

[20]*Fuller v. Rich*, 925 F. Supp. 459, 461 (N.D. Tex. 1995).

the district court resolves the motions to dismiss, I recommend that Alvarez be given the opportunity to amend her complaint to cure pleading deficiencies. The GEO Group's motion to dismiss Alvarez's section 1983 claim should be denied.

**Section 1983 claims against the County**. The County makes the same essential arguments as The GEO Group about why Alvarez's section 1983 claims should be dismissed. The County's argument that Alvarez was a federal rather than a state prisoner fails because it focuses on Alvarez rather than the County as the named defendant.[21] The contracts between The GEO Group and the County show that the County acted in performance of a function traditionally the exclusive province of the state by contracting with The GEO Group to confine prisoners. The documents show that the County retained control over various aspects of the jail's management. The County's argument about pleading deficiencies fails because Rule 15(a) favors amending over dismissal and because pleading deficiencies can be addressed by an amended complaint. The County's argument that Alvarez's claim for liability for verbal and mental abuse should be dismissed[22] fails because it ignores Alvarez's physical injury.[23] The County's motion to dismiss Alvarez's section 1983 claim should be denied.

**Tort claims against The GEO Group**. Relying on Alvarez's characterization of The

---

[21]*Henderson v. Thrower*, 497 F.2d 125, 126 (5th Cir. 1974) (court held that federal prisoner housed in city jail had 1983 claim for denial of medical care, focusing on defendant's control over conditions and jail operations, and not on status of plaintiff as a federal prisoner).

[22]Docket entry # 11, p. 5.

[23]*See* 42 U.S.C. § 1997e (e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.").

GEO Group as the County's agent,[24] The GEO Group argued that governmental immunity shields it from Alvarez's tort claims.[25] The GEO Group relied on Texas case law determining that the San Antonio Water System, as an agent of the City of San Antonio, was entitled to governmental immunity under the Texas Tort Claims Act.[26] In response, Alvarez described the characterization in her complaint of The GEO Group as the County's agent as poorly worded and asserts that the complaint read as a whole does not portray The GEO Group as an employee or a political subdivision.[27]

Governmental immunity is an affirmative defense. The defendant asserting an affirmative defense bears the burden of establishing his defense. A plaintiff's factual allegations are insufficient to prove that a contractor is a government agent entitled to the defense of governmental immunity.[28] To the extent that Alvarez unintentionally characterized The GEO Group as a state agent, the deficiency can be corrected with an amended complaint. The GEO Group's motion to dismiss Alvarez's tort claims based on governmental immunity should be

---

[24]*See* docket entry # 1, ¶ 8.

[25]Docket entry # 7, pp. 3-4.

[26]*See Zacharie v. City of San Antonio by & through San Antonio Water Sys. Bd. of Trustees*, 952 S.W.2d 56, 58 (Tex. App.—San Antonio 1997, no writ) (explaining that because Texas law gives a city the power to create a board to manage and control the city water system, a board created pursuant to that authority is agent of that city).

[27]Docket entry # 14, p. 8.

[28]*See Loyd v. ECO Resources*, 956 S.W.2d 110, 130 (Tex. App.—Houston [14 Dist.] 1997, no pet.) (rejecting government contractor's claim that it was entitled to governmental immunity because the contractor failed to submit documentary evidence negating its status as an independent contractor); *Zuniga v. Navarro & Associates*, 158 S.W.3d 663, 672 (Tex. App.—Corpus Christi 2005, writ denied) (determining that law firm did not prove on summary judgment that it was an agent of a governmental entity and thus entitled to governmental immunity).

8

denied.

**Tort claims against the County**. The County asked for dismissal of Alvarez's intentional tort claims on grounds of governmental immunity.[29] "A Texas governmental unit is generally immune from tort liability unless the legislature has waived immunity."[30] To the extent that Alvarez seeks to sue the County for an intentional tort,[31] the County is immune from such claims because Texas has not waived its sovereign immunity for intentional torts.[32] Alvarez's intentional tort claims against the County should be dismissed.

The County also maintains that it is immune from Alvarez's negligence claim because Alvarez's allegations do not relate to the use of tangible property.[33] The Texas Tort Claims Act waives governmental immunity for injury caused by a use of tangible personal property.[34] This waiver applies only when the governmental unit itself uses the tangible property.[35] As tangible property, Alvarez identified a defective door—specifically, the door to cell number 112. The

---

[29] Docket entry # 11, p. 2.

[30] *Forgan v. Howard County, Tex.*, 494 F.3d 518, 520 (5th Cir. 2007).

[31] Alvarez's complaint sues the individually named defendants for assault and all defendants for intentional infliction of emotional distress.

[32] *See Tex. Dep't of Public Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001) (explaining that the Texas Tort Claims Act specifically excludes waiver for intentional torts).

[33] Docket entry # 11, p. 2.

[34] Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (Vernon 2005) ("A governmental unit in the state is liable for . . . personal injury . . . caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.").

[35] *San Antonio State Hosp. v. Cowan*, 128 S.W.3d 244, 246 (Tex. 2004).

County argued that it is immune because Alvarez, not the County, used the door.[36] Under state law, "use" means "to put or bring into action or service; to employ for or apply to a given purpose."[37] "A governmental unit does not 'use' personal property merely by allowing someone else to use it and nothing more."[38] In this case, Alvarez has pleaded more.

Alvarez alleged that defendant detention guards ordered her to close the cell door by removing a book used to prop the door open.[39] The County did not merely allow Alvarez to use the door.[40] Instead, the County employed the door for the purpose of confining Alvarez pursuant to its contract with The GEO Group to operate the jail and its agreement with the U.S. Marshal to house federal prisoners. Alvarez did not employ the door for her own use. Alvarez closed the door because detention guards ordered her to close the door. Had the door operated properly, the door would not have been propped open with a book and a guard in the Control Room could have closed the door. Alvarez's allegations are sufficient to allege the use of tangible property. I recommend denying the County's request to dismiss Alvarez's negligence claim.

---

[36]Docket entry # 18, p. 3.

[37]*Cowan*, 128 S.W.3d at 246.

[38]*Id*.

[39]Docket entry # 1, ¶ 22.

[40]*See Univ. Med. Ctr v. Harris*, No. 07-09-0127-CV, 2009 WL 3925385, at * 4 (Tex. App.—Amarillo Nov. 19, 2009, no pet.) (designated for publication) (finding a waiver of immunity by hospital for use of tangible property where surgeon left a towel inside a patient because the hospital provided the towel and other surgical instruments and supplies, and hospital employees assisted the surgeon; the hospital, through its employees, employed the towel for a given purpose); *Tex. St. Tech. College v. Beavers*, 218 S.W.3d 258, 266-67 (Tex. App.—Texarkana 2007, no pet.) (finding a waiver of immunity by state technical college for use of tangible property where the student-plaintiff alleged the governmental unit negligently equipped a hydraulic engine hoist, intentionally put the hoist into service for student use, and instructed the plaintiff on how to use the hoist).

**Claims against Jernigan**. Alvarez sued Jernigan in his official capacity as the former County sheriff and former chief administrative officer of the jail.[41] Jernigan asked for dismissal of the claims against him because he no longer holds the office of sheriff. Jernigan relies on two cases, neither of which Alvarez challenged. In the first case—*Zarrilli v. Weld*—the District Court for the District of Massachusetts dismissed the plaintiff's section 1983 claims brought against former state officers in their official capacities, reasoning as follows: "It is well settled that actions against state officers in their official capacities are suits against the office and cannot be maintained against the individual once that person is no longer serving in his or her official capacity."[42] The district court relied on the Supreme Court's decision in *Hafer v. Melo*,[43] in which the Supreme Court distinguished official capacity lawsuits from individual capacity lawsuits, and Rule 25(d),[44] allowing an official's successor to be automatically substituted as a party if the original defendant dies or leaves office.[45] The District Court in the Eastern District of Virginia took a similar approach in a Title VII case, dismissing the plaintiff's claim against a former sheriff because he no longer held the office of sheriff and thus lacked an official capacity in which he could be sued.[46] This reasoning appears sound considering Rule 25's substitution

---

[41]Docket entry # 1, 1st full ¶ & numbered ¶ 9 of complaint.

[42]*Zarrilli v. Weld*, 875 F. Supp. 68, 71 (D. Mass. 1995).

[43]502 U.S. 21 (1991).

[44]Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

[45]*See Zarrilli*, 875 F. Supp. at 71.

[46]*See Briggs v. Waters*, No. 2:06-CV-154, 2006 WL 1982758, 2 (E.D. Va. June 28, 2006), at * 2.

provision. Alvarez has not sought to substitute the current sheriff for Jernigan. I recommend dismissing the claims brought against Jernigan in his official capacity.

**Tort claims against The GEO Group employees**. The County, The GEO Group, and Assistant Warden Scott asked for dismissal of the state-law claims against the individually-named defendants under Texas's election-of-remedies provision because Alvarez characterized the individually-named defendants as County employees in her original complaint.[47]

Under the election-of-remedies provision, "[t]he filing of a suit . . . against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter."[48] "If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit."[49]

The election-of-remedies provision does not apply to the individually named defendants because the provision applies to "any individual employee of the governmental unit" and because the individually named defendants are not employees of a governmental unit. Alvarez alleged that the individual defendants are employed by The GEO Group and the County,[50] but The GEO Group stated in its answer that it employed Scott and the detention guards.[51] I recommend that

---

[47]Docket entry # 11, p. 3. *See also* docket entry # 7, pp. 5-6 & docket entry # 8, p. 4.

[48]Tex. Civ. Prac. & Rem. Code § 101.106(a) (Vernon 2005).

[49]Tex. Civ. Prac. & Rem. Code § 101.106(e) (Vernon 2005).

[50]Docket entry # 1, ¶¶ 10 & 11.

[51]Docket entry # 10, ¶¶ 10 & 11.

12

Alvarez be permitted to correct her allegation in an amended complaint. To the extent that the County seeks to bind Alvarez to her original allegation that the individually named defendants are County employees,[52] the election-of-remedies provision applies only to employees of a governmental unit regardless of a plaintiff's allegations. Defendants have not shown that the election of remedies provision has been extended to claims against non-governmental employees. The motion to dismiss the state law claims against the detention guards should be denied.[53]

**Recommendation**. For the reasons discussed herein, I recommend GRANTING the motions to dismiss (docket entry #s 7, 8, 11 & 19) to the following extent: I recommend DISMISSING: (1) the intentional tort claims against the County and (2) the claims against Jernigan in his official capacity. I recommend DENYING the motions in all other respects. If the district judge accepts this recommendation, I recommend DENYING Alvarez's motion to amend, subject to re-urging. This approach would permit Alvarez to reconsider her proposed amendment in light of the district judge's rulings on the motions to dismiss. I also recommend reminding the detention guards about the need to answer.[54]

**Instructions for Service and Notice of Right to Object/Appeal**. The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the

---

[52] Docket entry # 18, pp. 4-5.

[53] The GEO Group made the same argument. Docket entry # 7, p. 5. If the district judge denies the County's motion to dismiss the individually named defendants under the election-of-remedies provision, the district court can dismiss The GEO Group's motion to dismiss the individually named defendants under the election-of-remedies provision as moot.

[54] The detention guards did not file an answer. They apparently rely on the County's motion to dismiss.

clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[55] Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[56] Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this memorandum and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[57]

    **SIGNED** on March 1, 2010.

*[signature]*
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[55] 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

[56] *Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

[57] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).